Good morning. May it please the Court, my name is Ken Lau and I'm here today to represent State Defendants Christine Baker and Julie Hsu. I'm going to be splitting my time with my colleague, Scott Cronland, who represents the proposed intervener, the Teamsters. I  AB 219, which is codified at Labor Code Section 1720.9, raises the wages of drivers who deliver ready-mixed concrete to public works projects. It is part of California's prevailing wage law, which is a minimum wage law, and some of its purposes are to benefit workers through higher wages, ensure high-quality work on public construction projects. Minimum labor standards, like other social and economic legislation, come with a strong presumption of validity when the classification is not suspect and the classification is not suspect here. The burden is on the plaintiffs to negate every reasonably conceivable set of facts that could provide a rational basis for the classification, and this they cannot do. What's the state's best justification? Well, the state has many justifications, all of which support the classification. First of all, the ready-mix is a different type of material and its delivery to a public works construction site is different, as is the ready-mix industry itself. So ready-mix is a material used for structures. It's an indispensable material for pouring foundations, for building girders, columns, support walls to hold up structures. It's used in highways, tunnels, dams. Are there more training or special skills that ready-mix drivers have to have before doing that job than other delivery drivers? Is there a record for that? Yes. So the ready-mix drivers drive a specialized mixer truck. One cannot help but notice the trucks with the rotating drums when you're sitting in traffic on the freeway. And in the commercial license that the driver holds. Yes, yes, because it more easily tips over because of the rotating drum. And so there are special skills, special license that's required, as well as special skills, because the ready-mix driver has to control the rotations of the drum. The other side makes much ado about that there's no discretion on the part of the drivers. No, I don't think that's right. All they do is follow the order sheet for the concrete. Right, but the driver still needs to add the water that's specified and control the rotations when they're delivering the ready-mix. No, their point is that there's no exercise of any discretion. There's no, they're just sort of rote kind of operators. Really no different than the delivery drivers who deliver other items to a construction site. I don't believe that's correct because with the driver that delivers, say, lumber or something, all they do is drive and they drive to the job site. But with the ready-mix driver, they need to control the rotation when they're in the cab of the truck during the transit from the batch plant to the job site. And the mixer trucks are, again, specialized. They cost a lot more. And so because they cost a lot more, ready-mix companies are the ones that usually own the trucks. And so that goes to how the ready-mix industry is set up differently than other industries because the specialized mixer truck, because it's owned by the company, its drivers are usually employees, whereas for drivers of other materials, the drivers are usually independent contractors because the dump trucks that are used for other materials are less expensive. I assume the prevailing wage law resulted in or will result in an increase of driver wages, of ready-mix driver wages. Is that right? I mean, I assume that's the main reason for the opposition, right? I mean, the economic reason. Is that right? Yes, that's correct. Do you know what the difference is? The difference? Roughly, the wage difference. It depends on the county. So it depends on which county that the batch plant is located in. And were, before this legislation, were ready-mix drivers getting paid pretty much on the par with other types of drivers who brought stuff to a construction site? No. So it depends. Prior to this law, the ready-mix drivers and drivers of other materials, whether they were entitled to the prevailing wage was based on a judicially created test. And it depended on whether the driver was an employee of an on-site subcontractor, a from a dedicated plant set up specifically for that project. And AB 219 clarifies the law by doing away with those distinctions. So anytime there's a delivery of ready-mix to a public works job site, prevailing wages are required. And so back to, I think this is important, and I want to go back to the ready-mix industry, how it's set up a little differently. The ready-mix industry already, for the most part, treats its drivers as employees. And so they're already accustomed to paying an hourly wage, calculating overtime, carrying workers' compensation, keeping payroll records. Whereas drivers of other materials in those industries, because they're mostly independent contractors, they don't have to comply with those requirements. Now, California's prevailing wage law requirements mirror requirements for employees. You have to pay the drivers an hourly rate, overtime if they work over a certain number of hours. You need to keep certified payroll records. And so it was rational for the legislature to raise wages for ready-mix drivers based on the ready-mix industry's ability to comply with the prevailing wage law and not raise wages for drivers of other materials. That doesn't sound like a very convincing argument. It does not sound like a very convincing argument? No. Well, in the International Franchise Association, which was a case decided by this court, the court in that case said it's legitimate for the state to raise the minimum wage based on the industry's ability to comply. And in that case, the city of Seattle had a phase-in schedule, an accelerated phase-in schedule, for employers with 500 or more employees based on the fact that they could, they had a better ability to comply with that law. And so this case is similar to international franchise in that the legislature could have rationally concluded that the ready-mix industry is better positioned to comply with the law, whereas if you applied it to other industries, it would potentially economically disrupt those industries. And so I think I would have to disagree with you. I think it's a good argument based on the precedent that we have in the Ninth Circuit. And another rationale that sort of related to the – How much time were you going to cede to your – Yes, I think I'm out of time. Well, you can take all the time you want. It's just that I'm not going to extend the full amount of time. So if you're going to cede time, now is the time to do it. I think I'm going to reserve my time for rebuttal. Thank you. Okay. May it please the Court. Scott Cronland for the International Brotherhood of Teamsters. I'd like to reserve two minutes of my time for rebuttal. Also, in addition to the district court's error in deciding the merits of the equal protection issue, the district court also erred in denying the Teamsters leave to intervene. The issue of intervention is important because labor organizations often rely on this court's decision in Mendoza to intervene to defend labor standards laws. The district court's reasoning would essentially overrule Mendoza. If we affirm the district court, does that make that issue moot? It doesn't. The plaintiffs have made clear they intend to seek on-bank review on the F4A preemption issue. They may also seek U.S. Supreme Court review. As long as the case is alive, the issue of intervention is not moot. The court held that in the Cantela case, which is cited. Let me ask you this. If we were to reverse the district court, what's left to – this case is all teed up on a legal issue. What's left? Well, if this court reverses the district court and remands for entry of judgment, the plaintiffs will seek on-bank review on the F4A preemption issue. We want to be a party and defend the Mendoza decision. If they seek cert in the Supreme Court, we want to be a party to defend the court's ruling on the preemption issue. So intervention is not moot. Plus, for the future, if the district court's reasoning is right, that's going to interfere with labor organizations' ability to intervene in future cases involving labor standards laws. The district court reasoned that the Teamsters lacked a significantly protectable interest in the application of the prevailing wage law because their members would be covered by collective bargaining agreements that provide for prevailing wages. Now, that's not only contrary to the holding of Mendoza, which involves the same union, but it assumes that collective bargaining agreements fall out of the sky when workers join unions. You don't have a collective bargaining agreement when the workers are organizing. You don't have a collective bargaining agreement when the agreement is expired. Even when you do have a collective bargaining agreement, the statutory right is still valuable because the labor commissioner will enforce the right. It makes general contractors liable if the workers are not paid prevailing wages. Even if the statutory right were to be paid. Roberts. What was the district court's basis for not following Mendoza? Katyal. The district court said essentially that the Teamsters members were going to get the prevailing wage anyway under collective bargaining agreements, which would have also been true in Mendoza, which involved the same union, the same FAA preemption claim, the same prevailing wage law, and the same existing defendants. Even if the prevailing wage statute were just suspenders for someone who already had a belt, there's still a legally protected interest in protecting your suspenders from being taken away because you may need them. And that's all that's necessary for purposes of intervention to have a legally protectable interest. We certainly have that in the prevailing wage law. You know, as I said, the prevailing wage law, the statutory right is better than just a contractual right. The district court also failed to give weight to the fact that one of the main purposes of the prevailing wage law is to have a level playing field. So union represented workers who are able to negotiate collective bargaining agreements with prevailing wages don't lose their jobs when other employers underbid using low wage workers. That's why the prevailing wage law uses area standard wage rates in the first place. The district court said that was just speculative, but that's in fact one of the main purposes of the prevailing wage law. As declared by the California Supreme Court, it was alleged in our answer in support of intervention. So it shouldn't have been discounted. The district court also reasoned, albeit only in the context of permissive intervention, that our interests would be adequately represented by the state. But the state had more than just an abstract interest in defending its law. The state is also the customer for purposes of public works projects. And the district court found in granting a preliminary injunction against the law that the balance of hardships tipped sharply in favor of a preliminary injunction because the state would actually benefit from saving money on public works projects. As such, the state, because of its interest as customer, was unable to protect our members' much more narrow and parochial interest in defending the prevailing wage law. We also added, as the court has said is one of the tests for intervention and adequacy of representation, we would have added a necessary ingredient that was missing from the case, which is that the Teamsters understood why the labor market for ready-mix drivers is different than the labor market for other drivers. When the trucking associations came in to seek a preliminary injunction, we were ready with declarations explaining why the ready-mix drivers' duties are different, why the labor market is different, the drivers are more skilled, they get higher wages, they're more likely to be employees, they provide a more integral role in the project, whereas your dump truck drivers, they're lower-wage workers, typically owner-operators, they're not being paid an hourly wage, their deliveries are not intricately tracked, and therefore it would be much more a disruption of the industry if the legislature had chosen to extend the prevailing wage law further. At the time, the Teamsters were there with those declarations, the state was not. The state also was the same agency that had previously held that the prevailing wage law didn't apply to ready-mix drivers, and that was pointed out to the district court. The legislature essentially flipped the agency's decision when it passed the challenge statute, which, of course, the legislature was entitled to do. So the labor organization in this case would have added a necessary ingredient to the district court proceedings. Do you want to save time for your side to reply? Yes, unless the court has questions about either the merits or the intervention issue, I'll save time for rebuttal. I think it's still good morning, Your Honors. May it please the Court. Michael Yoder, I represent the appellees in this appeal. AB 219, California Labor Code Section 1720.9, is discriminatory, it's unfair, and it produces anti-competitive effects. It singles out ready-mix suppliers of all material suppliers to public works projects and imposes substantial costs and administrative burdens, which give other suppliers, which are directly competitive, these materials aren't indispensable, there are alternatives, gives those alternatives significant competitive advantages. The issue here, and I think this is critical, and I think the district court got it right, the issue isn't simply whether there's a rational basis for imposing a prevailing or minimum wage on ready-mix drivers. The issue is whether the classification, the discriminatory classification, is justified, whether there's a rational basis. And two key points here that I think make this case more important than just ready-mix drivers and what they'll be paid  First of all, I think the district court, again, got it right in concluding that it's not just any rational basis. The rational basis, when you single out a group, has to be tied to the purpose of the law. And the state and the Teamsters ignore that. All of these differences they offer up, and they were ever-changing and always evolving in the litigation, certainly raises a question. Well, that doesn't really make much difference. I mean, the legislature doesn't list all their reasons for doing what they do. It doesn't in terms of the ultimate role of this court. Right. Other than, I think it's... Yeah, but look, was there any conceivable, I understand, rational basis for what they did? But it's a starting point. It's a starting point. And when you ask the question, what's the best justification, I think they struggle to come up with one, because nothing is tethered to what really happened. But the second point, I think, is important to look at the legislative history, and that is that the government shouldn't be permitted, and I don't believe the Equal Protection Clause allows it to, advocate for a law on the basis of certain representations or assurances, and then when challenged, come into court and not only ignore those representations and assurances, but worse yet, completely contradict them. And on the justification they've offered for incrementalism... Well, the district court's analysis is that, you know, the district court acknowledges the argument that ready-mixed concrete drivers are not similarly situated, but then the district court said the differences are immaterial. Correct. And what counsels say is that the differences aren't immaterial, particularly if the teamsters have been allowed to intervene, they would be able to create an evidentiary record as to the differences in the industry in terms of ready-mixed drivers. I mean, it's not... it's a rational basis, so it's not as if there's a plausible policy reason, such as ready-mixed drivers are more involved in the flow of the construction, they have specialized trucks, there are differences in the industry. Any and all of those reasons sound pretty plausible to me as a policy goal for the California legislature. But that's not the question, and I'll hold off on a second for the teamsters, but they did participate. They submitted declarations. All that evidence was before the district court, so there was nothing the district court was deprived of in connection with the underlying proceedings. But the point is this. Sure, there's a difference between ready-mix and prefab concrete. Of course there is. But the question is, what's the purpose of the law? And the purpose of the prevailing wage law is to provide benefits to construction workers. And I would cite the court to the O.G. Sansone case, which is a California appellate court, 55 Caleb 3rd, 434, which was cited in the papers, 461. The statutory scheme, the cases decided under the California prevailing wage law and under the Davis-Bacon Act, as well as the legislative history available with respect to the Davis-Bacon Act, show clearly that prevailing wage legislation was designed to benefit the construction worker on public construction projects. Now, why is that important? Because when you look at these purported justifications, they have nothing to do with benefiting a construction worker because the ready-mix driver is not an integrated part of the construction process. Pre-AB 219, the law provided that when any material supplier, not just ready-mix, but any, was simply a commercial supplier, they weren't covered. The reason being, that wasn't the purpose of the law. They weren't... There some were covered, though. If they were integrated in the construction process. Well, so explain to me then, let's step back just so I understand the whole industry before this law was passed. But in a construction site where they had a dedicated source of ready-mix... Right. ...and the contractors were, the cement contractors were subcontractors, drivers of those trucks, ready-mix trucks, would have been covered by the prevailing wage rate. Do I understand that correctly? Because they were integrated into the construction process by being dedicated to that project. Not that the material was integral to the process. Correct. And it would be the same with asphalt. It would be the same with any other material, the same rules applied to all materials that were supplied to public works. So if you were a captive, that's all you were doing, then yes, you were part of the construction process. So the legislature says, well, we want to expand the coverage of the prevailing minimum wage law. And if they had simply... Correct. ...if they had done that in a way to be consistent with the purpose of the law, because AB 219 didn't change the purpose of prevailing wage law. Well, so why can't the legislature, though, say these ready-mix drivers and the trucks that they operate are significantly distinct and their involvement in the process of construction, because they deliver this material that has to be utilized in a very short period of time. Why can't they reasonably say that for those drivers, we want to make sure that they're all covered by the prevailing wage rate? The reason being is that, again, the purpose is construction, construction workers. And when a ready-mix driver is simply driving material to the site and then dumping it, the ready-mix driver acts no different than asphalt. Well, yeah. Lumber, precast, concrete. Acts no different. They bring the trucks up to the construction site and they may direct the arm of those ready-mix... They're told where to put it, just like asphalt. They have to get out there and they have to direct it. They have to make sure it's flowing at the right amount. They just don't dump it like an asphalt truck. They open the chute and it comes up. It's really no different. And the declarations before the district court make that entirely clear. Declaration from contractors, not just from ready-mix. Do they have to add water? Do they have any discretion in terms of how much water? Add others' direction. They don't make those determinations themselves. And significantly, if you think about it, when for structural integrity, which is a big issue that they raise, that this all has to do with structural integrity, although the classification makes no attempt to distinguish between structural integrity and roads and highways at all. So this is a classification that's both too narrow and too broad, if that's their objective. But when lumber is delivered, someone has to check ultimately before they use it to make sure that it's not defective. It's no different with ready-mix. Somebody has to make that determination before they use it. It goes into a pump. Somebody else, not a ready-mix driver, is going to take it out of that pump and make a determination whether it's proper or not. So in terms of structural integrity, in terms of work on site that may be integral to the construction process, the DIR got it right in Alameda Corridor. Those rules already exist. Well, but the legislature doesn't have to. I mean, the legislature could easily disagree with what the agency determined. That's their prerogative. That's their prerogative. That's how they do that. Not as a factual matter, Your Honor. Sure they can. Because there's no basis. They could say, now, we disagree with what the agency determined in that decision. I mean, they do it with court decisions. They say, we don't like your decision, and we're going to change the law. We're going to change the statute. And you guys are just off the – your opinion is off the books. Bye. But when they single out a group, there has to be a rational basis, and it has to be tethered to the purpose of the statute. So what was the district court's true rational basis that it relied on? The true rational basis is – No, no, like he said words to the effect of its economic favoritism. Well, that's the effect, and I think that's what he left with. Well, that's what he seemed to use as what he seemed to be terribly concerned about. Because there was an absence of any rational basis otherwise, and I think that's how he concluded that, and I think that's what courts often conclude. I think that in the Merrifield case, for example, a panel of this court struck down a regulation that singled out certain pest control companies and exempted others, and one of the problems with that was that the exemption made no sense because those that were exempted were more likely to bump into pesticide than those that were regulated, and the court said principle and non-contradiction. You can't do that. So this must be economic favoritism because we don't see any other reason. I think that's what the district court found here. Here we have a similar situation in that the purpose is to compensate construction workers. If you're simply a material supplier, you're not integrated into that process, and there's no rational basis for the state to conclude that that's not the case for ReadyMix. In fact, asphalt is more likely to be integrated into the process of construction, and why is that? Because for ReadyMix, especially in the structural arena, they're simply putting the ReadyMix into a pump. That's all they do. The asphalt folks are going to be out on the street or highway being directed as to how to gradually dump it into the forms. So in that sense, they're actually doing more, arguably, construction work than the ReadyMix driver. Does that ultimately matter? Let's assume for purposes of the argument that the ReadyMix drivers, that there is some factual basis to treat the ReadyMix drivers differently, that there's sufficient indications to support the legislature's view that ReadyMix drivers are more integrated into the flow of construction, but so are asphalt drivers. But there may be differences in the industry. As counsel said, maybe ReadyMix drivers are already mostly treated as employees. Can't the legislature choose to proceed incrementally so long as there's a rational basis for that? They could say, okay, well, in 2015, let's extend the prevailing wage law to ReadyMix drivers. We'll take another look at asphalt deliverers at some later point in time. Why isn't that okay? Well, this case is very different than International Franchise Association because there it was phasing. They didn't completely exclude smaller employers. They said, we're going to phase it so that you're going to be worked in more slowly. And the district court noted that as a significant distinction. Here, in terms of whether your employees are independent contractors, they're all covered by prevailing wage law. You don't get a free pass because you're using independent contractors if they're integrated into the construction work. So it makes no difference. They say, well, it's easier to track. And I think the district court was very skeptical of that. That's the reason here that it's easier to track ReadyMix than asphalt or nails or lumber or precast concrete. The fact is that they have to be tracked, whether they're independent contractors or employees. And as the evidence before the district court showed, these requirements from prevailing wage are significant, burdensome, and costly well beyond what the industry was already doing. So much so that it wasn't just non-union ReadyMix companies that were objecting to this. Because even the union companies, even though they may have been paying prevailing wage, are now subject to all these various requirements. But let me circle back to the nub of the issue. And skills may be a difference. Some would say, gee, doesn't it require a little more skill for a ReadyMix driver to haul the ReadyMix than an asphalt driver with a dump truck of asphalt or a precast concrete driver with a load of precast concrete. Here's the nub. The prevailing wage law is not about skills. It's not intended to regulate skills. It's compensation for any construction worker, whatever their skill level is. Now, they may get more if they're more skilled under prevailing wage, but it's not about skills. Skills are covered by other types of laws. Licensing with respect to structures, codes, building codes, and other such things. Not prevailing wage. And that's the disconnect, and I think that's what the district court was bothered by. Because all of these reasons that kept coming had nothing to do with the central purpose of the statute. The skill level has nothing to do with whether someone's working in a construction position on a public works job. Moreover, the duties aren't different when it comes to the construction aspect. And there was ample evidence before the court that wasn't contradicted in terms of what the duties of a ReadyMix driver are, and significantly, those same duties were spelled out in Alameda Quarter Project in a way entirely consistent with what's before this court and what was before the district court. And on that basis, the DIR, which is charged with responsibility, concluded as a factual matter that those duties are not integrated into the construction process. Can I go back to what you said earlier about the Teamsters having an opportunity to participate below? If we conclude that the motion to intervene should have been granted, would it make sense to send it back? Or are you saying that whatever submissions they had were actually presented and considered by the district court, setting aside the additional interests going forward that counsel explained? Right. I'll answer all the questions that the panel has asked to answer Judge Tashima's question. If this court affirms a district court, the intervention issue is moot. If the court reverses the argument that counsel was making, that since the appellees may seek en banc or cert, then they should be involved in that process, they still have to show either a right to intervene or that it should be granted permissively. And there's no question but that the state can adequately represent the Teamsters' interests and did both in the district court and in this court. And moreover, the Teamsters have been involved as amicus in this court and have been able to present this court with all of the views it has on these particular issues. It's difficult, though, to reconcile what the district court did here on intervention with what we said in MnDOTCA. What did I read the case as? Again, I think the district court got it right, and there's not a lot of guidance in MnDOTCA. But what the court said... No, but it's dealing with a very similar situation. No, but what the court said, okay, was that there the Teamsters' members had a significant protectable interest. Now, it didn't explain what that was, granted. But what the district court concluded here is that since the Teamster members are already getting prevailing wage, which is not controverted, then whatever interest they have is somewhat speculative and doesn't really justify... They want to protect that interest. The argument... They have a narrower focus in the state. Well, not really, because here there's no difference between the state's interest in upholding this law and the Teamsters' interest in upholding this law. They're on the same side, and the arguments are all the same. There are instances where the government has some different interests because of the way a law is structured, maybe because of the economics behind it. I mean, there are cases that go into that. But here there really is no difference. There was no issue of timing here. They moved to get in the case right away. Is that correct? I think the district court... They moved right away, but I think the concern was this case was on a fast track, I think, to the district court's credit, getting a resolution on this type of an issue as quickly as the court did. And I think the court was concerned that if you allowed... Well, was there any suggestion that by letting the IBT in that they were going to delay the proceedings? I think there was a concern that it could certainly... Well, it all teed up as a legal issue. The only thing that was factual was with respect to the preliminary injunction and the affidavit seemed to go to the harm. Ultimately. But I think that... Again, I think the district court didn't see that there was any particular reason why the Teamsters needed to be part of this given that they were already working with the state and were involved, and given they didn't have a direct protectable interest that was at risk. All right, thank you. Thank you very much. Again, we would ask that the district court be affirmed and that the judgment and the permanent injunction be left intact. Thank you so much. Okay, I think there was a little bit of time left. Do you decide how you're going to split that time? I just want to address the purpose of the prevailing wage law, which I think counsel has misstated. It's not to benefit only construction workers. If you look at the labor code itself, prevailing wages apply to construction, alteration, demolition, installation, repair, and maintenance work. So it's not the case that only construction workers are covered. And also, to his point about the rational basis being tied to the purpose of the law, well, the California Supreme Court in Lusardi said that the overall purpose of the prevailing wage law is to benefit and protect workers on public works projects. Another purpose is to ensure the superior efficiency of well-paid employees and to attract skilled workers to ensure high-quality work on these projects. And so because ReadyMix is a material used for structures and is perishable, it's rational and a legitimate governmental interest for the legislature to raise wages for drivers who deliver a material that's used for structures and also perishable. They argue that, well, asphalt is perishable, too, but only ReadyMix is used for structures and perishable. If you use sort of a Venn diagram, ReadyMix is the only one that's used for structures and perishable, whereas maybe steel and lumber is also used for structures. It's not perishable. And because of this overriding interest, it's rational to make the distinction to raise wages only for... How about asphalt? Asphalt's not used for structures, right? Steel and lumber may be used for structures, but they're not perishable. Asphalt's only used for roadways, then? Mainly for paving work, yeah. And the legislature could have rationally concluded that asphalt is only used for paving. And I think I ran out of time. I would like to thank the Court for its time today. Thank you, Your Honors. The legislature's decision to extend the prevailing wage law to the ReadyMix drivers, but not to go further and extend it to more drivers, is run-of-the-mill, mundane, everyday legislative line drawing that's in essentially every labor standards legislation. It just has to not be arbitrary. We've offered in our amicus brief eight rationally conceivable reasons why the legislature might have focused on the ReadyMix drivers, any one of which is sufficient. The distinction doesn't have to be related to the purpose of the prevailing wage law as Plaintiff's Counsel has urged. It has to be related to any conceivable legislative purpose. In New Orleans v. Dukes, for example, the decision to grandfather in the food truck operators wasn't related to the purpose of banning food trucks. It served reliance interests. Here, the legislature could have chosen to start with the ReadyMix drivers because they're more skilled, because they get higher wages, because they're more integral to the project, because they're more likely to be covered by collective bargaining agreements. Any one of the eight rational reasons we suggested for starting with ReadyMix drivers. If at some future date it wants to extend the law, that's up to the legislature. So again, the district court erred by focusing on what the district court thought was the purpose of the prevailing wage law and how the district court felt the purpose would have been better served by extending the prevailing wage law to all drivers. That's not the test for the legislature. The legislature just has to not be arbitrary. Okay. Thank you. Thank you, counsel, for your arguments this morning. Very interesting case. The matter is submitted at this time.
judges: Tashima, Paez, Nguyen